1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

ANTAEUS FOUNDATION EQUIPMENT,
LLC, a Washington limited liability company,

NO.

11
12

Plaintiff,

COMPLAINT

13

v.

JURY DEMAND

14

AMERICAN PILEDRIVING EQUIPMENT,
INC., a Washington corporation,

(Patent Infringement)

15
16

Defendant.

17

18          Plaintiff Antaeus Foundation Equipment, LLC ("Antaeus" or "Plaintiff") hereby

19   complains against defendant American Piledriving Equipment, Inc. ("APE" or "Defendant"),

20   and for its causes of action alleges as follows:

21                                          I.  PARTIES

22          1.       Antaeus is a limited liability company organized and operating under the laws of

23   the state of Washington with its principal place of business at 14645 25TH AVE SW, Burien,

24   WA, 98166.

25

**COMPLAINT** - 1

**BORDE LAW PLLC**
1700 7th Ave. Suite 4100
Seattle, Washington 98101
(206) 531-2722

2.      Plaintiff Antaeus is in the business of innovating, developing, marketing, and distributing vibratory pile drivers and deep foundation equipment, including vibratory drivers/extractors, diesel hammers, hydraulic impact hammers, and vibration suppressors.

3.      Defendant APE is a Washington corporation with its principal place of business at 7032 S 196th Street, Kent, WA 98032.

4.      APE is a direct competitor of Antaeus in the business of vibratory pile drivers and related equipment and services.

5.      APE and Antaeus offer products and services to overlapping customers through the same or similar channels of trade.

## II.  JURISDICTION AND VENUE

6.      This is an action for infringement under the patent laws of the United States, 35 U.S.C. § 271, et seq., and this Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      Defendant APE is subject to personal jurisdiction in this District because it has conducted and continues to conduct substantial business in Washington, including offering for sale products at issue in this dispute in Washington. APE also maintains its headquarters in this District.

8.      Venue is proper in this District under 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391(b) because APE resides in this District, has a regular and established place of business here, and because at least some of the acts giving rise to this Complaint occurred in this District.

**COMPLAINT** - 2

1    III.  <u>GENERAL ALLEGATIONS & FACTUAL BACKGROUND</u>

2    **The Technology and the Patent-in-Suit**

3    9.    The technology at issue in this matter was developed by John L. White, the

4  CEO of Antaeus.  Mr. White was also a co-founder of Defendant APE.

5    10.    U.S. Patent No. 12,116,744 titled "DAMPENING ASSEMBLY FOR

6  VIBRATORY PILE DRIVERS" (the "'744 Patent") was issued by the United States Patent

7  and Trademark Office on October 15, 2024.  The '744 Patent describes and claims dampening

8  assemblies for use in, for example, pile driving and/or crane systems.  A true and correct copy

9  of the '744 Patent is attached hereto as Exhibit A.

10    11.    Antaeus is the assignee and owner of the '744 Patent.

11    12.    The '744 Patent was duly and legally issued and is valid and enforceable.

12    13.    Antaeus has expended considerable time, effort, and money in the development,

13  marketing, and sales of its technology and products protected under the '744 Patent.

14    **Defendant's Prior Relationship with Plaintiff, Infringing Product Release,**

15    **and Knowledge of the Patent-in-Suit and Related Facts**

16    14.    As a co-founder of APE and now the CEO of APE's competitor (Antaeus), Mr.

17  White is familiar with APE and its operations.

18    15.    Due to his prior involvement with APE and current status as CEO of APE's

19  competitor, APE is also familiar with Antaeus and its operations.

20    16.    Shortly after the issuance of the '744 Patent, APE released a new product

21  known as the "APE Hanger."  A true and correct copy of a marketing pamphlet for the APE

22  Hanger distributed by APE is attached hereto as Exhibit B.

23    17.    The aforementioned APE Hanger pamphlet refers to the APE Hanger product as

24  the "only patented 2-Stage secondary suppression system to help reduce vibration to the

25  crane."

**COMPLAINT** - 3

18. The statement in Paragraph 17 is false because, on information and belief, the APE Hanger is not protected by an unexpired, currently enforceable patent.

19. The statement in Paragraph 17 is also false because Antaeus offers a 2-stage secondary suppression system that helps reduce vibration to cranes and is protected under the '744 Patent. This system is known as the Antaeus NO SHOCK™ system.

20. The rental rates offered by APE for its APE Hanger were identical to those first offered by Antaeus for its NO SHOCK™ system.

21. On information and belief, APE was aware of Antaeus's NO SHOCK™ system prior to the release of its APE Hanger system.

22. On information and belief, APE was aware of the '744 Patent prior to the release of its APE Hanger system.

23. On or about October 8, 2025, Antaeus directly notified APE of the '744 Patent.

IV.  FIRST CAUSE OF ACTION

(Direct Infringement of U.S. Patent No. 12,116,744)

24. Antaeus hereby incorporates the allegations in Paragraphs 1 through 23 above as though fully set forth herein.

25. On information and belief, Defendant APE has directly infringed the '744 Patent by using, selling, importing, and/or offering to sell or causing others to use, sell, import, and/or offer to sell a patented invention encompassed by one or more claims of the '744 Patent, including, but not limited to, the system offered under the name APE Hanger.

26. The using, selling, and/or offering to sell or causing others to use, sell, and/or offer to sell a patented invention encompassed by one or more claims of the '744 Patent by Antaeus has been without authority or license from Antaeus and in violation of Antaeus's rights, thereby infringing (either literally or through the doctrine of equivalents) the '744 Patent.

**COMPLAINT** - 4

**BORDE LAW PLLC**
1700 7th Ave. Suite 4100
Seattle, Washington 98101
(206) 531-2722

1    27.    APE has caused and will continue to cause Antaeus substantial damage and

2    irreparable injury by infringing the '744 Patent.

3    28.    Antaeus is entitled to recover from APE damages in an amount sufficient to

4    compensate it for the lost profits and/or reasonable royalty attributable to infringement of the

5    '744 Patent by Antaeus, and any additional profits attributable to such infringement in an

6    amount to be determined at trial, together with prejudgment interest thereon.

7    29.    At least following receipt of notice of the '744 Patent from Antaeus, APE's

8    infringement was willful, intentional, and deliberate.  Accordingly, this case is exceptional

9    under 35 U.S.C. § 285, and Antaeus is entitled to recover treble damages and its reasonable

10    attorneys' fees, expenses, and costs incurred in this action.

11    30.    Antaeus will suffer further irreparable injury, for which it has no adequate

12    remedy at law, unless and until APE is enjoined from further infringement of the '744 Patent.

13                    V.  SECOND CAUSE OF ACTION

14            (Inducement of Infringement of U.S. Patent No. 12,116,744)

15    31.    Antaeus hereby incorporates the allegations in Paragraphs 1 through 30 above

16    as though fully set forth herein.

17    32.    On information and belief, APE has induced infringement of the '744 Patent by

18    encouraging, aiding, requesting, or otherwise causing others to directly infringe the '744

19    Patent.

20    33.    APE's acts of encouragement include, without limitation, marketing, promotion,

21    sales, and the provision of instructions and materials describing and promoting infringing uses

22    of the APE Hanger.

23    34.    On information and belief, APE had specific knowledge of the '744 Patent at

24    the time of its infringement.

25

**COMPLAINT** - 5

**BORDE LAW PLLC**
1700 7th Ave. Suite 4100
Seattle, Washington 98101
(206) 531-2722

35.     On information and belief, at least after receiving notice of the '744 Patent, APE knew of the patent and knew that its acts of encouragement constituted infringement, or was willfully blind to that fact, and nevertheless continued to encourage, aid, and promote infringing uses of the APE Hanger.

36.     APE has caused Antaeus substantial damage by inducing infringement of the '744 Patent.

37.     Antaeus is entitled to recover from APE damages in an amount sufficient to compensate it for APE's inducement of others' infringement of the '744 Patent, together with prejudgment interest thereon.

38.     On information and belief, APE's inducement of infringement was willful, intentional, and deliberate.  Accordingly, this case is exceptional under 35 U.S.C. § 285, and Antaeus is entitled to recover treble damages and its reasonable attorneys' fees, expenses, and costs incurred in this action.

39.     Antaeus will suffer further irreparable injury, for which it has no adequate remedy at law, unless and until APE is enjoined from inducing infringement of the '744 Patent.

## VI.  THIRD CAUSE OF ACTION

### (Unfair Competition and False Advertising)

### Lanham Act - 15 U.S.C. § 1125(a)

40.     Antaeus hereby incorporates the allegations in Paragraphs 1 through 39 above as though fully set forth herein.

41.     APE has made false and misleading representations of fact in commercial advertising and promotion, including statements that APE has "[t]he only patented 2-Stage secondary suppression system to help reduce vibration to the crane."

**COMPLAINT** - 6

BORDE LAW PLLC
1700 7th Ave. Suite 4100
Seattle, Washington 98101
(206) 531-2722

42.     These statements were made on APE's website, in online marketing materials, including the APE Hanger marketing pamphlet shown in Exhibit B, and were directed to customers, distributors, and/or other market participants.

43.     The statement in Paragraph 41 is false because Antaeus has a patented 2-stage secondary suppression system that reduces crane vibration.

44.     On information and belief, the statement in Paragraph 41 is also false because the APE Hanger is not covered by any valid and enforceable United States patent that could support APE's claims of patent protection or exclusivity.

45.     On information and belief, the statement in Paragraph 41 is also false because APE has no valid, enforceable U.S. patent covering any other 2-Stage secondary suppression system to help reduce vibration to a crane that could support APE's claims of patent protection or exclusivity.

46.     These false and misleading representations of fact in commercial advertising and promotion misrepresent the nature, characteristics, and qualities of APE's goods, services, and commercial activities.

47.     APE's false and misleading statements were material because claims of patent protection and exclusivity are likely to influence purchasing decisions, distributor relationships, and pricing decisions in the relevant market.

48.     Reasonable consumers and distributors understand claims of patent protection to signify legal exclusivity and competitive superiority, and APE made such claims to gain an unfair competitive advantage.

49.     APE's false and misleading statements deceived or were likely to deceive customers, distributors, and other market participants into believing that APE possessed exclusive patent rights and that competing products were inferior, risky, and/or legally constrained.

COMPLAINT - 7

BORDE LAW PLLC
1700 7th Ave. Suite 4100
Seattle, Washington 98101
(206) 531-2722

50.    On information and belief, APE intended its statements to influence purchasing decisions and to discourage customers and distributors from considering or purchasing competing products, including Antaeus's products.

51.    After receiving written notice from Antaeus identifying the falsity of APE's patent and exclusivity claims, APE removed at least some of these claims from its website and online marketing materials.

52.    APE's removal of the claims following notice supports an inference that APE knew the statements were false or misleading at the time they were made.

53.    APE did not and has not issued any corrective advertising or otherwise attempted to remedy the effects of its prior false and misleading statements, and continues to sell the APE Hanger in the marketplace.

54.    As a direct and proximate result of APE's false and misleading advertising, Antaeus has suffered and continues to suffer competitive injury, including lost sales, lost market opportunities, price suppression, and damage to its ability to compete on equal terms.

VII.  <u>FOURTH CAUSE OF ACTION</u>

(False Patent Marking)

35 U.S.C. § 292

55.    Antaeus hereby incorporates the allegations in Paragraphs 1 through 54 above as though fully set forth herein.

56.    APE marked and advertised the APE Hanger as being "patented" and/or the "only patented" product/system in the relevant product/system category on APE's website and online marketing materials, including, but not limited to, in the APE Hanger pamphlet referenced above.

57.    These representations expressly or impliedly conveyed that the APE Hanger was protected and/or covered by one or more United States patents.

**COMPLAINT** - 8

58.    These representations also expressly or impliedly conveyed that competitors, including Antaeus, lacked lawful patent protection in the United States for competing products.

59.    At the time APE made these representations, the APE Hanger was not protected or covered by any valid and enforceable United States patent.

60.    At the time APE made these representations, APE lacked a reasonable basis to believe the APE Hanger was protected and/or covered by any valid and enforceable United States patent.

61.    Upon information and belief, APE knew, or was willfully blind to the fact, that the APE Hanger was not covered by any United States patent when it marked and advertised the APE Hanger as patented.

62.    Upon information and belief, APE marked the APE Hanger as patented with an intent to deceive the public, including customers, potential customers, and competitors.

63.    APE's false patent marking and patent-exclusivity representations were material and were made for the purpose of influencing purchasing decisions and discouraging competition.

64.    APE's conduct deceived or was likely to deceive customers, distributors, and/or other market participants into believing that APE possessed exclusive patent rights, thereby deterring them from purchasing competing products, including Antaeus's products.

65.    As a direct and proximate result of APE's false patent marking, Antaeus suffered competitive injury, including, but not limited to, lost sales, lost market opportunities, price erosion, and impairment of its ability to compete on equal footing in the marketplace.

66.    After receiving notice from Antaeus, APE removed the patent markings and exclusivity claims from a portion of its website and online marketing materials, thereby implicitly acknowledging that those representations were false or misleading.

**COMPLAINT** - 9

BORDE LAW PLLC
1700 7th Ave. Suite 4100
Seattle, Washington 98101
(206) 531-2722

67.     APE's removal of the false patent markings and claims, following notice, supports an inference that APE knew the representations were false at the time they were made and that the representations were material to purchasing and competitive decisions.

68.     Although APE appears to have removed at least some of its false patent markings and exclusivity claims after receiving notice, it has not taken corrective action to remedy the effects of its prior false representations, and the APE Hanger continues to be sold in the marketplace.

69.     The competitive harm caused by APE's false patent marking persists, including ongoing customer confusion and distortion of the competitive landscape resulting from APE's prior deceptive conduct.

## PRAYER FOR RELIEF

WHEREFORE, Antaeus respectfully requests that this Court enter judgment and relief as follows:

A. Enter an order that APE has infringed the '744 Patent;

B. Enter judgment in favor of Antaeus and against APE for damages for patent infringement pursuant to 35 U.S.C. § 284 in an amount to be determined at trial, but in no event less than a reasonable royalty for infringement of the '744 Patent;

C. Enter judgment in favor of Antaeus and against APE for damages adequate to compensate Antaeus for competitive injury resulting from unfair competition and false advertising;

D. Enter judgment in favor of Antaeus and against APE for damages adequate to compensate Antaeus for competitive injury resulting from false patent marking;

E. Enter an order preliminarily and permanently enjoining APE and its officers, agents, directors, employees, parents, subsidiaries, affiliates, divisions, successors, assigns, and

**COMPLAINT** - 10

all persons in privity or active concert or participation with them from continuing to infringe the '744 Patent;

F.   Enter an order directing that all documents, materials, and things, including, but not limited to, products, advertising and promotional materials, sales and marketing plans, and the like, which induce infringement, or otherwise violate Antaeus's rights in the '744 Patent be delivered up to Antaeus or destroyed;

G.   Enter an order finding that this case is exceptional under 35 U.S.C. § 285 and awarding Antaeus its reasonable attorneys' fees, expenses, and costs incurred in this action;

H.  Enter an order declaring that APE's infringement was willful and awarding Antaeus treble damages pursuant to 35 U.S.C. § 284;

I.   Enter an order requiring APE to undertake reasonable corrective advertising, including, but not limited to, notice to any customers and/or distributors who were previously exposed to the false representations, indicating that the APE Hanger is not and was not covered by exclusive patent rights, sufficient to remedy the effects of its prior false and misleading representations regarding patent protection and exclusivity; and

J.   For an award of such other and further relief as this Court deems just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Pursuant to the Federal Rules of Civil Procedure § 38(b), Antaeus demands a trial by jury for this action on all issues so triable.

DATED this 6th day of February, 2026.

/s/ Manish Borde
Manish Borde, WSBA #39503
BORDE LAW PLLC
1700 7th Ave., Suite 4100
Seattle, WA 98101
Telephone: (206) 531-2722
mborde@bordelaw.com

**COMPLAINT** - 11

BORDE LAW PLLC
1700 7th Ave. Suite 4100
Seattle, Washington 98101
(206) 531-2722

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Matthew D. Thayne (*Pro Hac Vice Forthcoming*)
THAYNE & DAVIS LLC
26 S. Rio Grande Street, Suite 2072
Salt Lake City, UT 84101
Telephone: (801) 230-3770
mthayne@tdiplaw.com

Brendon K. Barton (*Pro Hac Vice Forthcoming*)
BARTON LEGAL GROUP
460 W. 50 N., Suite 500
Salt Lake City, UT 84101
Telephone: (385) 217-0680
b.barton@bartonlegalgroup.com

*Attorneys for Plaintiff Antaeus Foundation Equipment, LLC*

**BORDE LAW PLLC**
1700 7th Ave. Suite 4100
Seattle, Washington 98101
(206) 531-2722

# EXHIBIT A

US012116744B2

(12) **United States Patent**
White

(10) **Patent No.:** **US 12,116,744 B2**
(45) **Date of Patent:** **Oct. 15, 2024**

(54) **DAMPENING ASSEMBLY FOR VIBRATORY PILE DRIVERS**

(71) Applicant: **John L. White**, Seahurst, WA (US)

(72) Inventor: **John L. White**, Seahurst, WA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **17/692,681**

(22) Filed: **Mar. 11, 2022**

(65) **Prior Publication Data**

US 2023/0287644 A1    Sep. 14, 2023

(51) **Int. Cl.**
*E02D 11/00* (2006.01)
*E02D 7/18* (2006.01)

(52) **U.S. Cl.**
CPC ................ *E02D 11/00* (2013.01); *E02D 7/18* (2013.01)

(58) **Field of Classification Search**
CPC ........... E02D 7/18; E02D 11/00; E02D 13/00; E02D 7/00
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,713,791 A * | 7/1955 | Stewart | E02D 1/00 73/845 |
| 5,263,544 A * | 11/1993 | White | E02D 11/00 173/162.1 |
| 5,522,680 A * | 6/1996 | Hoss | E02D 17/00 405/209 |
| 7,080,958 B1 * | 7/2006 | Morris | E02D 13/02 173/210 |
| 9,567,192 B2 * | 2/2017 | Tuenkers | E02D 7/18 |

* cited by examiner

*Primary Examiner* — Sean D Andrish

(74) *Attorney, Agent, or Firm* — Matthew D. Thayne; Thayne and Davis LLC

(57) **ABSTRACT**

The dampening assembly includes upper and lower members connecting respectively, to a crane and a vibratory pile driver. The dampening assembly includes inner and outer housing members, the inner housing member connected to the outer housing member. The lower member is connected to an inner assembly of the dampening assembly. The inner housing member is connected to the outer housing member. Connected between the inner assembly and the inner housing member are opposing elastomer shock absorbing elements which stretch to varying extents depending upon the weight applied to the vibratory pile driver.

**17 Claims, 4 Drawing Sheets**





**FIG. 1**



FIG. 2



FIG. 3

**U.S. Patent**    Oct. 15, 2024    Sheet 4 of 4    US 12,116,744 B2



FIG. 4C



FIG. 4B



FIG. 4A

US 12,116,744 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

## DAMPENING ASSEMBLY FOR VIBRATORY PILE DRIVERS

### TECHNICAL FIELD

This invention relates generally to vibratory pile drivers, and more particularly concerns damping mechanisms to reduce shaking and vibration of vibratory pile drivers during operation.

### BACKGROUND OF THE INVENTION

During operation of certain vibratory pile drivers, shaking or vibration of the pile driver occurs, particularly during starting and starting of operation, but during the entire operation as well. Such effects are undesirable, for both operators and users of such pile drivers. Various attempts have been made to reduce the shaking/vibration of such pile drivers during operation. One known arrangement is a suppressor system using elastomers, such as shown in U.S. Pat. No. 5,263,544 to White. Such arrangements include multi-stage systems using various elastomer arrangements, all in order to smooth out shaking/vibration during operation of pile drivers. Another arrangement to smooth out shaking is often referred to as damping or a dampening system. In one such arrangement, two opposing plates are arranged with a solid rubber barrel-like member connected between them, operating in compression. This arrangement has had some positive effect in reducing shaking action of pile drivers. An alternative to such a solid rubber arrangement uses an elastomer member in place of the solid rubber member, but also operating in compression which has been shown not to be effective. Further, if the elastomer fails in such an arrangement, the load falls.

Accordingly, an effective dampening system would be advantageous in the pile driving art.

### SUMMARY OF THE INVENTION

Accordingly, disclosed is a dampening assembly for use in a pile driving system for pile driving and/or pile pulling, the dampening assembly comprising: a lower connecting member for connection to the vibratory device portion of a pile driving system; an upper connecting member for connecting to a crane assembly for the pile driving system, the upper connecting member connected to an outer housing for the dampening assembly; an inner assembly connected to the lower connecting member, the inner assembly including a safety pin extending through an opening in the outer housing, wherein the dampening assembly includes an inner housing connected to the outer housing; and opposing elastomer shock absorbing members connected between the inner assembly and extending to the inner housing, wherein in operation, weight on the dampening assembly results in a corresponding stretching of the opposing elastomer members, reducing vibration of the pile driving system during operation.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a vibratory pile driving system, showing the dampening assembly of the present invention.

FIG. 2 is an elevational, partially cutaway, view of the dampening assembly of the present invention, without force on the dampening assembly.

FIG. 3 is an elevational, partially cutaway, view of the dampening assembly, with significant weight on the assembly.

FIG. 4A is a simplified elevational view showing the stretching of the elastomer members of the dampening assembly without any elastomer stretching.

FIG. 4B is a simplified elevational view showing stretching of the elastomer members to 4 inches.

FIG. 4C is a simplified elevational view showing stretching of the elastomer members to 14 inches.

### BEST MODE FOR CARRYING OUT THE INVENTION

Referring now to FIGS. 1-3, a vibratory pile driver system is shown generally at 10. They system includes a conventional construction crane 12 with an extended boom 14 and a crane line shown at 16. At the end of crane line 16 is a crane hook 19 which is connected the dampening assembly 20 of the present invention, by a first shackle member 22 which is bolted by assembly 23 to an outer housing member 24 of the dampening assembly 20. A second shackle member 26, positioned at 90 degrees to the first shackle member 22, is connected to a vibratory pile driver (vibro) 27 which operates on a pile 32 in the soil 35. The operation/purpose of the arrangement of FIG. 1, including the dampening assembly 20, is to reduce, even significantly reduce, the transfer of vibrations of the vibratory pile driver into the crane line 16 and boom 14. Referring now to FIGS. 2 and 3, the second shackle 26 is connected by a bolt assembly 28 to an inner assembly 38 which includes a pin 40. The inner assembly 38 includes an inner housing 42 which is connected to the outer housing 24. Opposing elastomer shock absorbing members 44 and 46 include inner end plates bolted to the inner assembly 38, extending to the inner housing 42 to which they are also bolted by outer end plates. The elastomeric members 44 and 46 are conventional and well known in the pile driver shock absorbing art. The opposing elastomer members 44 and 46 stretch together during operation of the pile driver. The dampening assembly also includes a weight measuring scale 50 for convenience, but which is not essential for the operation of the dampening assembly. In the embodiment shown, the scale includes weights at 15 ton increments from zero through 45 tons, although the scale could differ in the specific weights measured.

In operation, as weight is applied, the elastomers operate in shear, which is a significant difference relative to other available damping systems which use elastomer(s) operating in compression. Operation of the elastomers in shear is an important aspect of the present invention. FIGS. 4A, 4B and 4C show the condition of the elastomers stretching under 3 weight conditions. In the arrangement shown, the distance between the inner and outer end plates in the elastomers is 12.25 inches, which could be varied. FIG. 4A shows the elastomers under a static (no weight) condition. FIG. 4B shows the elastomers stretched to a length of 13 inches with 4.0 inches of relative movement of the inner assembly produced by 8 tons of weight as an example, while FIG. 4C shows the stretched condition of the elastomers with 14 inches of movement, and a stretched length of 18.6 inches produced by 30 tons of weight. These conditions will vary depending on the weight applied.

It is also important to recognize that with the arrangement of the present invention, if the weight results in a failure or tearing of the elastomers, pin 40 falls to its lowest position in the outer housing, as shown in FIG. 1, but maintains the

US 12,116,744 B2

3

connection with the vibro so that operation can continue, although shaking/vibration will occur due to the lack of the dampening protection.

It should also be recognized that weights **52** of various amounts can be connected to the exterior of the outer housing, shown on one side only.

Accordingly, a dampening assembly has been disclosed which uses elastomers in a shear arrangement to modulate or modify shaking/vibration during operation of a vibratory pile driver.

Although a preferred arrangement of the present invention has been disclosed for the purpose of illustration, it should be understood that various changes, modifications and substitutions may be incorporated without departing from the spirit of the invention which is defined by the claims that follow:

What is claimed is:

**1**. A dampening assembly for use in a pile driving system for pile driving and/or pile pulling, the dampening assembly comprising:

a lower connecting shackle member for connection to a suspending weight portion of the pile driving system, the suspending weight portion operating on a pile;

an upper connecting member for connecting to a crane assembly for the pile driving system, the upper connecting member connected to an outer housing for the dampening assembly;

an inner assembly connected to the lower connecting shackle member, the inner assembly including a safety pin extending through an opening in the outer housing;

wherein the inner assembly includes an inner housing connected to the outer housing; and

opposing elastomer shock absorbing members connected between the inner assembly and the inner housing, wherein in operation, weight on the dampening assembly results in a corresponding stretching of the opposing elastomer shock absorbing members, reducing vibration of the pile driving system during operation.

**2**. The dampening assembly of claim **1**, wherein the elastomer shock absorbing members have end plates at one end thereof connected to the inner assembly and plates at the other end thereof connected to the inner housing.

**3**. The dampening assembly of claim **1**, wherein the safety pin is configured to fall downwardly to and contact a lower end of the opening in the outer housing when the elastomer shock absorbing members fail.

**4**. The dampening assembly of claim **1**, wherein the outer housing is configured to allow for connection of selected weights to the outer housing.

**5**. The dampening assembly of claim **1**, wherein the lower connecting shackle member is positioned at 90 degrees to the upper connecting member.

**6**. The dampening assembly of claim **1**, wherein the upper connecting member is a shackle.

**7**. The dampening assembly of claim **1**, wherein the suspending weight portion is a vibratory device.

**8**. A dampening assembly for use with a crane system subject to vibration, the dampening assembly comprising:

an upper connecting member for connecting to a crane line portion of the crane system, the upper connecting member connected to an outer housing of the dampening assembly;

a lower connecting member for releasably connecting to a weight which would otherwise be connected to the crane line portion of the crane system;

4

an inner assembly connected to the lower connecting member, the inner assembly including a safety pin extending through an opening in the outer housing;

wherein the inner assembly includes an inner housing connected to the outer housing; and

opposing elastomer shock absorbing members connected between the inner assembly and the inner housing, wherein in operation, the weight connected to the dampening assembly results in a corresponding stretching of the opposing elastomer shock absorbing members, thereby reducing vibration of the crane system during operation.

**9**. The dampening assembly of claim **8**, wherein the elastomer shock absorbing members have end plates at one end thereof connected to the inner assembly and end plates at the other end thereof connected to the inner housing.

**10**. The dampening assembly of claim **8**, wherein the safety pin is configured to fall downwardly to a lower end of the opening in the outer housing when the elastomer shock absorbing members fail.

**11**. The dampening assembly of claim **8**, wherein the outer housing is configured to allow for connection of selected weights to the outer housing.

**12**. The dampening assembly of claim **8**, wherein the lower connecting member is positioned at 90 degrees to the upper connecting member.

**13**. The dampening assembly of claim **8**, wherein the upper connecting member and the lower connecting member are shackles.

**14**. A dampening assembly, comprising:

an upper connecting member;

a lower connecting member;

an outer housing coupled to the upper connecting member;

an inner assembly coupled to the lower connecting member;

at least one elastomeric member coupled between the outer housing and the inner assembly such that weight applied to the lower connecting member results in movement of the inner assembly relative to the outer housing and shearing of the at least one elastomeric member, wherein the at least one elastomeric member comprises a pair of opposing elastomeric members; and

a safety member configured to prevent failure of the pair of opposing elastomeric members from causing the dampening assembly to release the weight, wherein the safety member comprises a safety pin, and wherein the lower connecting member comprises a shackle member configured to be releasably connected to a vibratory pile driver.

**15**. The dampening assembly of claim **14**, further comprising a scale configured to provide a measurement of the weight applied to the lower connecting member.

**16**. The dampening assembly of claim **14**, wherein the safety pin extends through an opening formed in the outer housing.

**17**. The dampening assembly of claim **16**, wherein the safety pin is configured to contact a lower portion of the opening to prevent disconnection of the inner assembly and the outer housing upon failure of the pair of opposing elastomeric members.

\* \* \* \* \*

# EXHIBIT B

# American Piledriving Equipment

## Presents: The APE Hanger



# History and experience speaks for itself

APE has the solution to the vibration issue.
The built in APE Two-Stage Vibration Suppressor.

The APE Two-Stage Suppressor System is time proven by contractors who've used them in the foundation industry Worldwide. It has been in use for over 30 years with out damaging a single crane due to excessive vibration.

APE Vibratory Driver/ Extractor with the Two-Stage Suppressor do NOT need a secondary vibration dampener as a solution to vibration.

Talk to any contractor in the foundation industry having used APE equipment, and they will testify that the Two-Stage Suppressor stands the test of time.



# In cases where the crane company or project requirements call for another layer of vibration dampening beyond the time proven built in APE 2-Stage vibration dampening system, how should this be addressed?



**Introducing the solution to secondary vibration suppressing systems that further help to reduce vibrations to the crane boom during the starting and stopping phases of the vibro.**

***<u>The APE Hanger</u>***
**The only patented 2-Stage secondary suppression system to help reduce vibration to the crane.**





## Specifications
- **108 Tons of line pull capacity**
- **Weight: 4,415 lbs**

- **Dampening Range**
- **0 - 108 TONS**

**Features a removable Top Lifting Lug for quick and easy cable installation.**



**Two 55-ton safety shackles allow the crew to loop the cable through the top of the vibro hammer and secure it beneath the APE Hanger.**



# The APE Hanger




- If your crane company insists you use a secondary suppression system, the APE Hanger is here to do the job.

- The APE Hanger is the only additional suppression system __authorized__ to be used with an APE Vibro.



# Rely on the brand that you can trust… Go APE!



**At the end of the day the only thing that matters is getting your pile in the ground safely—and APE is here to provide the highest quality, American-made foundation equipment that gets the job done!**



**Call APE for details
on how to get your
"APE Hanger" today.**

**1-800-248-8498**