UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTAEUS FOUNDATION EQUIPMENT LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN PILEDRIVING EQUIPMENT INC.,<br><br>Defendant. | CASE NO. 2:26-cv-00455-JHC<br><br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss for Failure to State a Claim. Dkt. # 15. The Court has reviewed the materials filed in support of and in opposition to the motion, the rest of the case file, and the governing law. The Court finds oral argument unnecessary. Being fully advised, for the reasons below, the Court GRANTS the motion IN PART and DENIES it IN PART. The motion is GRANTED as to Plaintiff's induced infringement claim, which is DISMISSED WITHOUT PREJUDICE**.** The motion is DENIED as to Plaintiff's direct infringement, false patent marking, and Lanham Act claims. And the Court GRANTS Plaintiff leave to amend the Complaint.

## II
## Background

Plaintiff Antaeus Foundation Equipment, LLC sues Defendant American Piledriving Equipment, Inc. (APE) for patent infringement, unfair competition and false advertising under the Lanham Act, and false patent marking. Dkt. # 1 ¶¶ 24–69. Plaintiff claims that Defendant infringed on U.S. Patent No. 12,116,744 (the ’744 Patent), entitled “DAMPENING ASSEMBLY FOR VIBRATORY PILE DRIVERS.” *Id.* ¶ 10. The ’744 Patent, which was issued by the United States Patent and Trademark Office on October 15, 2024, discloses “a dampening assembly for use in a pile driving system” designed to “reduc[e] vibration of the pile driving system during operation.” *Id.* ¶ 10 & p. 19. Claim 1 states:

> A dampening assembly for use in a pile driving system for pile driving and/or pile pulling, the dampening assembly comprising:
>
> a lower connecting shackle member for connection to a suspending weight portion of the pile driving system, the suspending weight portion operating on a pile;
>
> an upper connecting member for connecting to a crane assembly for the pile driving system, the upper connecting member connected to an outer housing for the dampening assembly;
>
> an inner assembly connected to the lower connecting shackle member, the inner assembly including a safety pin extending through an opening in the outer housing;
>
> wherein the inner assembly includes an inner housing connected to the outer housing; and
>
> opposing elastomer shock absorbing members connected between the inner assembly and the inner housing, wherein in operation, weight on the dampening assembly results in a corresponding stretching of the opposing elastomer shock absorbing members, reducing vibration of the pile driving system during operation.

*Id.* at 20.

Claim 8 states:

> A dampening assembly for use with a crane system subject to vibration, the dampening assembly comprising:
>
> an upper connecting member for connecting to a crane line portion of the crane system, the upper connecting member connected to an outer housing of the dampening assembly;

> a lower connecting member for releasably connecting to a weight which would otherwise be connected to the crane line portion of the crane system;
> an inner assembly connected to the lower connecting member, the inner assembly including a safety pin extending through an opening in the outer housing;
> wherein the inner assembly includes an inner housing connected to the outer housing; and
> opposing elastomer shock absorbing members connected between the inner assembly and the inner housing, wherein in operation, the weight connected to the dampening assembly results in a corresponding stretching of the opposing elastomer shock absorbing members, thereby reducing vibration of the crane system during operation.

*Id.*

Claim 14 states:

> A dampening assembly, comprising:
> a upper connecting member;
> a lower connecting member;
> an outer housing coupled to the upper connecting member;
> an inner assembly coupled to the lower connecting member;
> at least one elastomeric member coupled between the outer housing and the inner assembly such that weight applied to the lower connecting member results in movement of the inner assembly relative to the outer housing and shearing of the at least one elastomeric member, wherein the at least one elastomeric member comprises a pair of opposing elastomeric members; and
> a safety member configured to prevent failure of the pair of opposing elastomeric members from causing the dampening assembly to release the weight, wherein the safety member comprises a safety pin, and wherein the lower connecting member comprises a shackle member configured to be releasably connected to a vibratory pile driver.

*Id.*

Plaintiff claims that the technology underlying the ’744 Patent was developed by John L. White, the CEO of Antaeus. *Id.* ¶ 9. Because Mr. White was also a co-founder of APE, Plaintiff submits that APE is “familiar with Antaeus and its operations.” *Id.* ¶ 15. Antaeus asserts that APE infringed on the ’744 Patent by releasing a new product called the “APE Hanger” shortly after the issuance of the ’744 Patent. *Id.* ¶¶ 16, 25. In a marketing pamphlet for the APE Hanger, APE referred to the product as the “only patented 2-Stage secondary suppression system

to help reduce vibration to the crane." *Id.* ¶ 17. Plaintiff claims that Antaeus "offers a 2-stage secondary suppression system" protected under the '744 Patent, known as the NO SHOCK™ system, "that helps reduce vibration to cranes." *Id.* ¶ 19.

Based on the above allegations, Antaeus brings the following claims against APE: (1) direct infringement of the '744 Patent; (2) inducement of infringement of the '744 Patent; (3) unfair competition and false advertising under the Lanham Act in connection with APE's promotion of the APE Hanger; and (4) false patent marking in connection with the promotion of the APE Hanger. *Id.* ¶¶ 24–69. Defendant now moves to dismiss the Complaint, arguing that Antaeus fails to state a claim for direct or induced infringement, violation of the Lanham Act, or false patent marking. Dkt. # 15.

## III
## DISCUSSION

A. Rule 12(b)(6) Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral*, Inc., 710 F.3d 946, 956 (9th Cir.

2013). If a complaint lacks a "cognizable legal theory" or "sufficient facts alleged to support a cognizable legal theory[,]" the court should dismiss it for failure to state a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In the context of patent infringement cases, these standards do not require a plaintiff to "prove [their] case at the pleading stage" or "plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citations omitted). But they do require more than "merely alleg[ing] entitlement to relief[,]" supplying "labels and conclusions," or providing "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* at 1352–53 (citations omitted). The level of detail required to adequately plead infringement will vary depending on the specific factual circumstances of the case and the nature of the asserted patent. *See id.* at 1353. But there must be enough facts "that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* In other words, the facts alleged must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Id.* (internal quotation marks and citations omitted). Otherwise, the court should dismiss the claim and grant the plaintiff leave to amend. *See id.*; *see also CyWee Grp. Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 981 (W.D. Wash. 2018); *CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, 721 F. Supp. 3d 1050, 1053, 1055 (N.D. Cal. 2024).

B. Analysis

Defendant argues that the Court should dismiss the Complaint because it "fails to do much more than merely recite the legal elements" of the four claims asserted by Antaeus. Dkt.

# 15 at 1.[1] For the reasons below, the Court DENIES the motion as to Plaintiff's direct infringement, false patent marking, and Lanham Act claims. The Court GRANTS the motion as to Plaintiff's induced infringement claim, with leave to amend.

1. Direct Infringement

"To state a claim for direct patent infringement, a plaintiff must allege that a defendant, without authority, makes, uses, offers to sell, or sells any patented invention." *O'Brien v. Microsoft Corp.*, 2020 WL 4734325, at *2 (W.D. Wash. Aug. 14, 2020) (cleaned up and citations omitted). To properly plead such a claim, "a plaintiff must plausibly allege that a defendant directly infringes each limitation in at least one asserted claim." *Scripps Rsch. Inst. v. Illumina, Inc.*, 2016 WL 6834024, at *5 (S.D. Cal. Nov. 21, 2016) (collecting cases). Defendant contends that Antaeus "does not meet the bare minimum" pleading standards set forth in *Iqbal*, *Twombly*, and *Bot M8*, as applied by courts in this District. Dkt. # 15 at 3.

In support of this argument, APE first relies on *Cheddar Creations, Inc. v. Pawico*, 2024 WL 1346856 (W.D. Wash. Mar. 31, 2024). There, the court dismissed a claim for direct infringement as inadequate because the plaintiff had merely identified the purportedly infringing product and alleged that the product was "covered by, embod[ied], or practice[d] one or more of the claims" of the plaintiff's patent. *Cheddar Creations*, 2024 WL 1346856, at *5. But here, Plaintiff does more than identify the APE Hanger as the allegedly infringing product and assert in conclusory fashion that the product is covered by the '744 Patent. Rather, Antaeus describes the assertions made in connection with APE's promotion and marketing of the APE Hanger,

[1] In its Reply, Defendant also argues that Plaintiff failed to conduct a pre-filing investigation as required by binding Federal Circuit case law. Dkt. # 19 at 2 (citing *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981 (Fed. Cir. 2000)). Because this argument was raised on reply for the first time, the Court does not consider it. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006) ("Issues raised for the first time in a ... reply brief are generally deemed waived.").

specifically its assertion that the APE Hanger is the "only patented 2-Stage secondary suppression system to help reduce vibration to the crane." Dkt. # 1 ¶ 17. Plaintiff proceeds to allege that Antaeus's NO SHOCK™ system, which is covered by the '744 Patent, also "offers a 2-stage secondary suppression system that helps reduce vibration to cranes." *Id.* ¶ 19. These allegations, taken as true, offer enough facts to give APE "fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bot M8*, 4 F.4th at 1353 (internal quotation marks and citations omitted).

Defendant's reliance on *Schuyleman v. Barnhart Crane & Rigging Co.*, Case No. 2:23-cv-0562-JLR (W.D. Wash.), is unavailing. While the *Schuyleman* court originally dismissed the plaintiff's direct infringement claim, it later declined to dismiss a second amended complaint. *See Schuyleman v. Barnhart Crane & Rigging Co.*, 2023 WL 5427933, at *3 (W.D. Wash. Aug. 23, 2023); *Schuyleman v. Barnhart Crane & Rigging Co.*, 2023 WL 8528501, at *4 (W.D. Wash. Dec. 8, 2023). In analyzing the plaintiff's amended direct infringement claim, the court applied the framework set forth by the Federal Circuit in *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). *Schuyleman*, 2023 WL 8528501, at *4. In *Disc Disease*, the Federal Circuit held that a plaintiff's allegations of direct infringement met the *Iqbal/Twombly* pleading standard where (1) the matter involved a "simple technology," (2) the asserted patents were attached to the complaint and consisted of four independent claims; (3) the complaint identified the accused products by name and by attaching photos of the product packaging, and (4) the complaint alleged that the accused products met "each and every element of at least one claim of the . . . Patent, either literally or equivalently." *Disc Disease*, 888 F.3d at 1260. Applying these factors, the *Schuyleman* court found the plaintiff's amended complaint satisfactory. *Schuyleman*, 2023 WL 8528501, at *4.

So too here. Antaeus's Complaint: (1) involves a relatively simple technology; (2) attaches the '744 Patent, which consists of three independent claims and 14 dependent claims; (3) specifically identifies the accused product, the APE Hanger, by name, and attaches images obtained from APE's own promotional and marketing materials; and (4) alleges that the APE Hanger is "encompassed by one or more claims of the '744 Patent."[2] Dkt. # 1 ¶ 25 & pp. 20, 22–28; *Disc Disease*, 888 F.3d at 1260.

Accordingly, the Court denies Defendant's request to dismiss Plaintiff's direct infringement claim.

2. Induced Infringement

To state a claim for induced infringement under 35 U.S.C. § 271(b), a plaintiff must allege that the accused infringer knew of the patent, knew that the induced acts constituted infringement, and specifically intended to encourage the infringing conduct. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 642 (2015). Knowledge can be satisfied by plausibly alleging "either actual knowledge or willful blindness,"[3] with willful blindness "requir[ing] the patentee to show not only that the accused subjectively believed that there was a high risk of infringement, but also that the accused took deliberate actions to avoid confirming infringement." *P2i Ltd. v. Favored Tech USA Corp.*, 2024 WL 4294652, at *6 (N.D. Cal. Sept. 24, 2024); *Robocast, Inc. v. Netflix, Inc.*, 640 F. Supp. 3d 365, 371 (D. Del. 2022) (quoting *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016)).

---

[2] While the Complaint does not identify the specific claims of the '744 Patent "encompassed" by the APE Hanger, Dkt. # 1 ¶ 25, the complaint analyzed by the Federal Circuit in *Disc Disease* was similarly generalized. *See Disc Disease*, 888 F.3d at 1260 (finding sufficient plaintiff's allegation that the accused products were covered by "each and every element of at least one claim" of the patent).

[3] The Court would prefer a different term; perhaps "ignorance."

Defendant submits that Plaintiff's induced infringement claim fails because the Complaint does not plausibly allege knowledge of or intent to induce infringement. Dkt. # 15 at 5–6. The Court agrees.

"[T]he plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017) (citations omitted). Defendant is correct that Antaeus relies principally on conclusory allegations that APE, "[o]n information and belief," was aware of the '744 Patent and the NO SHOCK™ system before the release of its APE Hanger system. Dkt. # 1 ¶¶ 21–22. Plaintiff in turn cites *Lifetime* for the proposition that Defendant's alleged knowledge of the '744 Patent and continued promotion and encouragement after direct notice of the patent is "sufficient to support a reasonable inference of the requisite knowledge." Dkt. # 18 at 9 (citing *Lifetime*, 869 F.3d at 1379–80). But in *Lifetime*, the Federal Circuit found that the complaint there adequately alleged intent to infringe by showing that the defendant hired employees with knowledge of the patent, its "scope," and the "products covered thereby" at the time of the infringing act. *Lifetime*, 869 F.3d at 1380.

Antaeus's Complaint alleges that John L. White, the developer of the technology underlying the '744 Patent, previously co-founded APE, such that APE was "familiar with Antaeus and its operations," that the APE Hanger was released "[s]hortly after the issuance of the '744 Patent," and that, at least as of October 8, 2025, APE was directly notified of the '744 Patent. Dkt. # 1 ¶¶ 9, 15–16, 23. But Plaintiff does not allege additional facts akin to those considered by the *Lifetime* court as evidence of intent to infringe, including: the specific timeline of the alleged infringement (*i.e.*, when the APE Hanger was released), APE's knowledge regarding the scope and extent of the '744 Patent, whether APE made or sold similar products

before gaining knowledge of ’744 Patent, and whether the APE Hanger has any “noninfringing use.” *Lifetime*, 869 F.3d at 1380. The Court therefore concludes that the allegations in the Complaint do not suffice to plead knowledge of infringement[4] and intent to induce infringement.

Separately, Antaeus does not identify any third-party infringer. In opposing the motion, Plaintiff contends that it need not do so at the pleading stage. Dkt. # 18 at 9 (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339–40 (Fed. Cir. 2012)). But as Defendant notes, direct infringement by a third party is a threshold requirement of a Section 271(b) induced infringement claim. Dkt. # 15 at 6–7; *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 586 (2026) (citing *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 572 U.S. 915, 920–921 (2014)). Nor does the Complaint plead “facts sufficient to allow an inference that at least one” third-party infringer exists. *See Bill of Lading*, 681 F.3d at 1336.

Accordingly, the Court dismisses Plaintiff’s induced infringement claim without prejudice and with leave to amend.

3. False Patent Marking

To state a claim for false patent marking under 35 U.S.C. § 292, a plaintiff must adequately allege that (1) an unpatented article (2) was marked in a way that falsely suggested it is patented (3) with the intent of deceiving the public. *Music Grp. Servs. US Inc. v. Peavey Elecs. Corp.*, 2011 WL 13232515, at *2 (W.D. Wash. June 21, 2011) (citing *Brinkmeier v. Graco Child.’s Prods. Inc.*, 684 F. Supp. 2d 548, 551 (D. Del. 2010)). Because these claims

---

[4] Nor do these allegations show that APE “subjectively believed that there was a high risk of infringement” and “took deliberate actions to avoid confirming infringement,” as relevant to show willful blindness. *Unwired Planet*, 829 F.3d at 1364.

sound in fraud, they are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Id.*

Defendant contends that Plaintiff's false patent marking claim is subject to dismissal because: (1) Antaeus "fails to allege that that the APE Hanger was never protected by any patent"; (2) Antaeus's allegations are based on "information and belief" and therefore do not satisfy Rule 9(b)'s heightened fraud standard, particularly where the issue of the APE Hanger's patent status is "readily determinable by public information"; and (3) Antaeus fails to plead competitive injury. Dkt. # 15 at 8–9.

As to the first ground, the Court agrees with Antaeus that the absence of allegations regarding the applicability of Section 292(c), which provides a statutory defense related to expired patents, is not sufficient to warrant dismissal of an otherwise particularized false marking claim. A complaint need not "anticipate and negate" affirmative defenses. *Cunningham v. Cornell Univ.*, 604 U.S. 693, 702 (2025) (cleaned up). Nor is Antaeus's use of allegations based on information and belief fatal to its false marking claim. The Complaint's false marking allegations premised "[u]pon information and belief" are limited to those concerning APE's knowledge of the patent status of the APE Hanger and its intent to deceive the public. Dkt. # 1 ¶¶ 61–62. These allegations are precisely the kinds of "matters within the opposing party's knowledge" that warrant the relaxation of Rule 9(b)'s particularity standards. *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Finally, the Complaint adequately alleges a "competitive injury" under Section 292. A "competitive injury" is "[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1400 (Fed. Cir. 2015) (citing Black's Law Dictionary (9th ed. 2009)). The Complaint

identifies APE as a “direct competitor” of Antaeus, specifies the nature of the entities’ shared industry, products offered, and overlapping customer base, and identifies the competitive harm resulting from APE’s allegedly false marking, including lost sales and market opportunities, price erosion, and impairment of Plaintiff’s ability to compete on equal footing in the marketplace. Dkt. # 1 ¶¶ 4–5, 65. As Defendant observes, several courts in this Circuit have found allegations of competitive injury to be too “speculative” where the complaint did not connect the purportedly false patent marking to lost sales or other competitive injury. *See* Dkt. # 15 at 8–9 (citing *Urban Dollz LLC v. Lashify, Inc.*, 2023 WL 8292459, at *5–6 (C.D. Cal. Oct. 17, 2023)); *see also Squaregles LLC, v. Laltitude LLC*, 2024 WL 5469237, at *4 (C.D. Cal. July 2, 2024). But here, Antaeus points to specific facts connecting APE’s promotion of the APE Hanger to Antaeus’s patented technology, particularizing its allegation of competitive injury. *See, e.g.*, Dkt. # 1 ¶ 20 (“The rental rates offered by APE for its APE Hanger were identical to those first offered by Antaeus for its NO SHOCK™ system.”).

Accordingly, the Court denies Defendant’s request to dismiss Plaintiff’s false patent marking claim.

4. Lanham Act

The Lanham Act was enacted to “protect persons engaged in . . . commerce against unfair competition.” 15 U.S.C. § 1127. Section 43(a)(1) of the Lanham Act establishes the following federal cause of action for unfair competition:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Defendant argues that Antaeus's Lanham Act claim is "completely foreclosed by case law reaching back over two decades" precluding "claims about inventorship or authorship." Dkt. # 15 at 9 (citing *Urban Dollz*, 2023 WL 8292459, at *5). In 2024, the Federal Circuit held that a cause of action may arise from Section 43(a)(1)(B) of the Lanham Act where a party "falsely claims that it possesses a patent on a product feature and advertises that product feature in a manner that causes consumers to be misled about the nature, characteristics, or qualities of its product." *Crocs, Inc. v. Effervescent, Inc.*, 119 F.4th 1, 2 (Fed. Cir. 2024), *cert. denied sub nom. Crocs, Inc. v. Double Diamond Distrib., Ltd.*, 146 S. Ct. 194 (2025). While *Crocs* reflects an interpretation of Tenth Circuit law, its reasoning is instructive because it revisits *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300 (Fed. Cir. 2009), which Defendant cites in support of its position. *See* Dkt. # 15 at 9. As the Federal Circuit explained, Lanham Act claims sounding in false designation of *authorship* (which are not actionable in the Ninth Circuit) are distinct from false claims that a product is *patented*. *Crocs*, 119 F.4th at 5–6 (discussing *Baden*, 556 F.3d at 1307; *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008)). Contrary to Defendant's suggestion, the latter claims are not foreclosed by caselaw applying Section 43(a)(1)(B) of the Lanham Act.

Accordingly, the Court denies Defendant's request to dismiss Plaintiff's Lanham Act claim.

## IV
## CONCLUSION

For these reasons, the Court:

(1) GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss (Dkt. # 15). The motion is GRANTED as to Plaintiff's induced infringement claim, and DENIED as to Plaintiff's direct infringement, false patent marking, and Lanham Act claims.

(2) DISMISSES WITHOUT PREJUDICE Plaintiff's induced infringement claim.

(3) GRANTS Plaintiff leave to amend with respect to the induced infringement claim. Should Plaintiff wish to file an amended pleading, such pleading must be filed on or before December 16, 2026.

Dated this 25th day of November, 2026.

John H. Chun
United States District Judge